**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-01999-CMA-MEH

KB HOME COLORADO, INC., a Colorado corporation

      Plaintiff,

vs.

STATE NATIONAL INSURANCE COMPANY, a Texas corporation

      Defendant.

---

## ORDER DENYING MOTION FOR REMAND

---

      This matter is before the Court on Plaintiff's Motion to Remand (Doc. # 14), filed on October 17, 2011.  The question presented in this motion is whether Plaintiff's declaratory judgment action against Defendant State National Insurance Company constitutes a "direct action" against an insurer within the meaning of 28 U.S.C. § 1332(c)(1).  If this is a direct action, then the parties are not completely diverse and the Court would lack subject-matter jurisdiction.  If this is not a direct action, however, the parties would be completely diverse and the Court would possess original jurisdiction over the matter.  For the following reasons, the Court finds that Plaintiff's claim is not a direct action and, consequently, that Plaintiff's motion for remand must be denied.

## I.  BACKGROUND

      This declaratory judgment action arises from a dispute concerning the interpretation of professional liability insurance policies that were issued by Defendant

to Plaintiff's former lawyers (hereinafter, "Insured Lawyers").  The first insurance policy issued by Defendant to Insured Lawyers covered January 1, 2009 to January 1, 2010 (the "2009 Policy").  The second insurance policy issued by Defendant to Insured Lawyers covered January 1, 2010 to January 1, 2011 (the "2010 policy").  (Doc. # 2, ¶¶ 8, 13.)  Both policies limited the liability of Defendant to $2 million for each claim and an annual aggregate of $2 million.

Plaintiff retained the Insured Lawyers to represent it in a number of litigation matters.  During the course of the Insured Lawyers' representation, Plaintiff received two adverse rulings, one in December 2009, and the second in January 2010.  (Doc. # 2, ¶¶ 9, 16.)  Plaintiff alleges that it learned it might have a professional liability claim against the Insured Lawyers in late January 2010.  (*Id.*, ¶ 17.)  In the fall of 2010, Plaintiff demanded that Defendant pay the limits of the 2010 Policy plus a portion of the 2009 Policy to settle Plaintiff's claims against the Insured Lawyers.  (*Id.*, ¶ 20.)  Also in the fall of 2010, Defendant settled a third-party claim for legal malpractice against the Insured Lawyers that was paid out of the 2009 Policy.  As a result, the 2009 policy became partially depleted by that settlement because the limit of the 2009 Policy was $2 million annual aggregate.  (*Id.*, ¶ 21.)

In December 2010, Plaintiff commenced three professional liability lawsuits against the Insured Lawyers.  Defendant maintained that the 2009 Policy, with its reduced limits due to the third-party settlement, covered Plaintiffs' claims.  Plaintiff contended that its claims against Insured Lawyers were covered by the 2010 Policy, which had not been depleted.

In May 2011, Plaintiff, Defendant, and Insured Lawyers entered into a settlement agreement in which the parties agreed to resolve Plaintiff's claims against the Insured Lawyers for the remaining limits of the 2009 Policy, but preserved the issue of whether the 2009 Policy or the 2010 Policy governed.  (Doc. # 14-1, ¶¶ 1-2.)  Specifically, the settlement agreement provided that Plaintiff could file a declaratory judgment action "to determine whether [Defendant] is required to make an additional payment of [$500,000] to KB Home."  (*Id.*, ¶ 4.)

Plaintiff originally filed its declaratory judgment action in state court on July 14, 2011.  (Doc. # 2.)  Defendant removed the case to federal court on August 2, 2011. (Doc. # 1.)  Plaintiff filed the instant motion for remand on October 17, 2011, alleging that the parties were not completely diverse and the Court, thus, lacked subject-matter jurisdiction over the action.  (Doc. # 14.)  Defendant responded on November 8, 2011, and Plaintiff replied on November 21, 2011.  (Doc. ## 15, 16.)

## II. <u>LEGAL STANDARD</u>

Pursuant to Article III of the United States Constitution, Congress vested jurisdiction in the federal courts "over controversies between citizens of different states." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000).   The party invoking federal jurisdiction bears the burden of proving that such jurisdiction exists.  *Montoya v. Chad*, 296 F.3d 952, 955 (10th Cir. 2002).  Thus, when a defendant removes a case from state court asserting the existence of diversity jurisdiction, that removing defendant must establish that the jurisdictional requirements of 28 U.S.C. § 1332 have been met. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).  Those

requirements are that the matter in controversy exceeds the sum or value of $75,000

and is between the citizens of different States.  28 U.S.C. § 1332(a).  Section 1332(a)

requires "complete diversity," *i.e.*, no plaintiff may be the citizen of a state of which any

defendant is also a citizen.  *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365,

373-74 (1978).

Removal statutes are construed strictly, and any doubts about the correctness of

removal are resolved in favor of remand.  *Fajen v. Found. Reserve Ins. Co., Inc.*, 683

F.2d 331, 333 (10th Cir.1982) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S.

100, 108-09 (1941)).  "Moreover, there is a presumption against removal jurisdiction."

*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

### III. ANALYSIS

For decades, a corporation's state of citizenship was statutorily limited to (1) its

state of incorporation and (2) the state of its principal place of business.  *Eltsefon v.

State Farm Mut. Auto. Ins. Co.*, --- F. Supp. 2d ---, 2011 WL 5593144, at *2 (E.D. Va.

Nov. 16, 2011).  This changed in 1964 when Congress amended 28 U.S.C. § 1332(c)(1)

in response to a flood of diversity cases brought pursuant to a Louisiana statute that

allowed plaintiffs to bring an action against a tortfeasor's insurer without joining the

tortfeasor.  *See id.*  The 1964 amendment, often referred to as the "direct action

proviso," provides that:

> in any direct action against the insurer of a policy or contract of liability
> insurance . . . to which action the insured is not joined as a party-
> defendant, **such insurer shall be deemed a citizen of the State of
> which the insured is a citizen**.

28 U.S.C. § 1332(c)(1) (emphasis added).

In this case, it is undisputed that the amount of controversy exceeds $75,000. It is also undisputed that Plaintiff is a Colorado corporation with its principal place of business in Colorado and Defendant is a Texas corporation with its principal place of business in Texas.  Normally, this would be sufficient to satisfy the requirements for diversity jurisdiction.  However, because the Insured Lawyers are citizens of Colorado, if this lawsuit is a direct action, then Defendant is deemed a citizen of Colorado and the parties would lack complete diversity.  Thus, whether the parties are completely diverse turns on whether this case constitutes a direct action.

Although Congress did not define "direct action," most courts have construed the term narrowly, as has the Tenth Circuit.  *See Tuck v. United Servs. Auto. Assoc.*, 859 F.2d 842, 847 (10th Cir. 1988).  This is because legislative history makes clear that § 1332(c)(1) was amended for the narrow purpose of counteracting Louisiana's "direct action" statute that permitted plaintiffs to sue a tortfeasor's insurer directly without joining the tortfeasor as a party.[1]  *See Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 10 (1989) (observing that "Congress added the [direct action] proviso . . . in response to the caseload of Federal District Courts in Louisiana resulting largely from that State's adoption of a direct action statute").  Thus, the fact that an insurer is a direct party in a

---

[1] The Senate Report accompanying the 1964 amendment states that:

> The purpose of the proposed legislation is to amend [§ 1332(c)(1)], so as to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant.

S. REP. No. 88-1308, at 1 (1964), *as reprinted* in 1964 U.S.C.C.A.N. 2778, 2778-79.

lawsuit does not mean that a lawsuit is necessarily a direct action under § 1332(c)(1).
*See Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 674 (2d Cir. 1992) ("[s]ensitive to
congressional design, a number of courts have recognized that 'direct action' is a form
of words taken from the Louisiana statute and that simply because an insurer is a direct
party does not make the litigation a 'direct action.'").

Given this clear congressional intent, courts have limited the "direct action"
proviso to "situations where the insurer's status is that of a payor of a judgment based
on the negligence of one of its insureds."[2]  *Rosa*, 981 F.2d at 674 (internal quotations
and citation omitted).  The essential feature of a direct action is that the insurer has
been substituted as a party-defendant for the insured.  *See Hipke v. Kilcoin*, 279
F. Supp. 2d 1089, 1092 (D. Neb. 2003).  As the Ninth Circuit has explained:

> Courts have uniformly defined the term 'direct action' as used in
> § 1332(c)(1)] as those cases in which a party suffering injuries or damage
> for which another is legally responsible is entitled to bring suit against
> the other's liability insurer without joining the insured or first obtaining a
> judgment against him . . . .  Thus, unless the cause of action urged against
> the insurance company is of such a nature that the liability sought to be
> imposed could be imposed against the insured, the action is not a direct
> action.

*Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901-902 (9th Cir. 1982) (internal

citations and quotation omitted).  As the Tenth Circuit has found, there is no direct

---

[2] Plaintiff correctly notes in its Reply that removal statutes are to be construed so as to
restrict federal court jurisdiction, and that any doubts about the correctness of removal
are resolved in favor of remand.  *See Fajen*, 683 F.2d at 333.  However, this does not
change the fact that the meaning of "direct action" must still be construed narrowly,
given clear legislative intent and the Supreme Court's analysis in *Northbrook.  See
Northbrook*, 493 U.S. at 10 (construing § 1332(c)(1) narrowly according to its clear
language and specific legislative history); *see also Rosa*, 981 F.2d at 675 n.9
("Particularly after *Northbrook*, we should be reluctant to give the proviso a broader
reach than the clear purpose set forth by Congress.").

action when a plaintiff brings claims against an insurer for an insurer's independent wrongs, such as an insurer's failure to settle within policy limits. *Tuck*, 859 F.2d at 847 (citing *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985)).

In light of the narrow circumstances in which a lawsuit is considered to constitute a "direct action," the Court finds that the instant declaratory judgment action does not fall within the ambit of § 1332(c)(1)'s direct action proviso.[3] The Court arrives at this conclusion by carefully examining the nature of Plaintiff's claim.

In this case, Plaintiff seeks a declaration that the 2010 Policy applies to Plaintiff's professional liability claims against Insured Lawyers. This requires the Court to interpret the relevant insurance policies and determine whether coverage exists. Significantly, whether the Insured Lawyers are liable is not at issue because the underlying tort action against the Insured Lawyers has already been litigated and resolved by settlement. In the settlement agreement, the parties agreed that "[n]either the [Insured Lawyers' ] liability to [Plaintiff] nor the amount of [Plaintiff's] damages shall be an issue for determination in the declaratory judgment action." (Doc. # 14-1, ¶ 4.) When a tort action has already been litigated against the insured, "the insurer is no longer litigating

---

[3] Defendant contends that the Tenth Circuit "does not treat a declaratory judgment action as a 'direct action.'" (Doc. # 15 at 3.) The implication is that there exists a bright-line rule precluding the Court from finding that a declaratory judgment action may constitute a direct action. To support this assertion, Defendant relies on *Ortiz v. Biscanin*, 190 F. Supp. 2d 1237, 1244 (D. Kan. 2002). In *Ortiz*, the court noted a lack of Tenth Circuit authority for the proposition that a declaratory judgment action may constitute a direct action. However, Defendant has not provided any Tenth Circuit authority (or authority from any other circuit) holding that a declaratory judgment action can never be a direct action. Moreover, courts in other jurisdictions have found that declaratory judgment actions may, in the right circumstances, constitute a direct action. *See Corn v. Precision Contracting, Inc.*, 226 F. Supp. 2d 780, 783 (W.D.N.C. 2002). Thus, the Court's conclusion that the instant case is not a direct action is not based on the fact that this is a declaratory judgment action.

the issue of its insured's liability but is instead 'litigating the existence of a new liability.'"
*Hipke*, 279 F. Supp. 2d at 1093 (quoting *Butler v. Polk*, 592 F.2d 1293, 1295-96 (5th Cir. 1979)).  Thus, the parties are no longer litigating the liability of the Insured Lawyers; rather, they are litigating whether Plaintiff's professional liability claims against the Insured Lawyers were covered by the 2010 Policy.

        Whereas a direct action is a tort claim in which the insurer stands in the shoes of the insured tortfeasor, the instant action is a separate, independent contract action that does not require the Court to determine the liability of the Insured Lawyers.  *See Rosa*, 981 F.2d at 678 (noting that courts have not applied the § 1332(c)(1) proviso in suits by an injured third party against an insurer for failure to settle within policy limits); *Hipke*, 279 F. Supp. 2d at 1092-93 (holding that a garnishment action is not a direct action because it likely "involves determination of coverage under a contract of insurance").  Because Plaintiff is essentially suing Defendant for failure to make payments under the 2010 Policy, this declaratory action arises from Defendant's alleged independent wrongs and is, therefore, not a direct action.  *See Tuck*, 859 F.2d at 847.

        The Court's conclusion that the instant declaratory judgment action is not a direct action is consistent with legislative intent.  *See Rosa*, 981 F.2d at 677 n.22 ("Congress' plain objective in amending § 1322(c) was to ensure that '**tort cases** involving only local residents' . . . would not appear in federal court.") (emphasis added).  Although Plaintiff's claims against Insured Lawyers' were tortious in nature, Plaintiff's instant claim against Defendant is wholly contractual.  Furthermore, because Plaintiff's claim involves "the interpretation of an insurance policy issued by a foreign insurer . . . it is

difficult to characterize the instant action as a local accident case involving only local residents." *Id.*

In its motion to remand, Plaintiff relies largely on *Corn*, a case in which the court found that a declaratory judgment action constituted a direct action under § 1332(c)(1). *See* 226 F. Supp. 2d at 783.  In *Corn*, the plaintiffs requested a declaration that an amendment to a North Carolina state statute applied to a liability insurance policy issued by a defendant insurance company.  As in this case, the defendant insurance company had admitted the negligence of its insured, acknowledged its obligation to pay on behalf of the policy, and "the only question involve[d] the limits of its policy."  *Id.* at 783.  However, there is one material distinction between *Corn* and the instant case. In explaining why the declaratory judgment action was not a "direct action," *Corn* emphasized that the action did not involve "the interpretation of the insurance policy itself."  *Id.*  This suggests that if the declaratory judgment action had involved the interpretation of the insurance policy, *Corn* would have reached a different result.  Thus, not only is *Corn* distinguishable from the case at bar, *Corn* provides further support for the Court's conclusion that a declaratory judgment action concerning only the interpretation of an insurance contract is not a direct action within the meaning of § 1332(c)(1).[4]

---

[4] Because the Court finds that this declaratory judgment action does not constitute a "direct action" under § 1332(c)(1), it need not consider Defendant's alternative argument that Plaintiff has stepped into the shoes of the insured by virtue of assignment of indemnification rights clause in the settlement agreement .  (Doc. # 15 at 6-7); *Fleming v. Allstate Ins. Co.*, 709 F. Supp. 216, 217 (D. Colo. 1989) (holding that the direct action proviso "does not apply to actions between the insurer and the insured or one afforded the status of an insured.").

## IV.  **CONCLUSION**

For the reasons stated above, the Court concludes that the "direct action proviso" in § 1332(c)(1) does not apply to this declaratory judgment action, and there exists complete diversity of citizenship between the parties.

Accordingly, it is ORDERED that Plaintiff's Motion for Remand (Doc. # 14) is DENIED.  Each party shall bear their own costs and fees associated with this motion.

DATED:  February __06__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge